UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERRY L. RISTER,                      )   Case No. EDCV 04-1424-RC
                                      )
              Plaintiff,              )
                                      )
vs.                                   )   OPINION AND ORDER
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of the Social            )
Security Administration,              )
                                      )
              Defendant.              )
_____  )

     Plaintiff Terry L. Rister filed a complaint on November 23, 2004,
seeking review of the Commissioner's decision denying his application
for disability benefits.  The Commissioner answered the complaint on
April 15, 2005, and the parties filed a joint stipulation on June 3,
2005.


                              **BACKGROUND**

                                   **I**

     On September 18, 2002 (protective filing date), plaintiff applied
for disability benefits under the Supplemental Security Income program
of Title XVI of the Social Security Act ("the Act"), claiming an

1   inability to work since June 27, 2002, due to multiple sclerosis,

2   arthritis, and Crohn's disease.  Certified Administrative Record

3   ("A.R.") 37-41, 47.  The plaintiff's application was denied on

4   November 27, 2002, and was again denied on March 10, 2003, following

5   reconsideration.  A.R. 25-33.  The plaintiff then requested an

6   administrative hearing, which was held before Administrative Law Judge

7   Milan Dostal ("the ALJ") on February 17, 2004.  A.R. 34, 226-53.  The

8   ALJ issued a decision finding plaintiff is not disabled.  A.R. 9-15.

9   The plaintiff appealed this decision to the Appeals Council, which

10  denied review on September 19, 2004.  A.R. 3-6.

11

12                                    **II**

13       The plaintiff, who was born on December 13, 1957, is currently 47

14  years old.  A.R. 37.  He has an eleventh grade education, and has

15  previously worked as a truck driver and a janitor, and in prison as a

16  cook, a plumber, and a sewing machine operator.  A.R. 48, 53, 230-35.

17

18       The plaintiff served 10 years in state prison, and was released

19  on September 14, 2002.  A.R. 234-35.  While incarcerated, plaintiff

20  was diagnosed with an arteriovenous malformation ("AVM"),[1] Crohn's

21  disease,[2] and multiple sclerosis ("MS"),[3] among other conditions.

22  _____

23       [1]  A cerebral arteriovenous malformation is "a congenital
    anomaly of the brain vasculature composed of arterial and venous
24  channels with many interconnecting shunts without a capillary
    bed; clinical characteristics include hemorrhage, headache, and
25  focal epileptic seizures."  <u>Dorland's Illustrated Medical
    Dictionary</u>, 1050 (29th ed. 2000).
26

27       [2]  Crohn's disease is "a chronic granulomatous inflammatory
    disease of unknown etiology, involving any part of the
28  gastrointestinal tract from mouth to anus, but commonly involving

1   A.R. 114-56.  On March 23, 1999, x-rays were taken of plaintiff's
2   lumbosacral spine, and those x-rays showed extensive degenerative
3   arthritic changes at all levels, more pronounced at L4-L5 and L5-S1.
4   A.R. 154.  Cervical spine x-rays, taken August 15, 2001, showed
5   discogenic changes confined to the C5 and C7 levels.  A.R. 139.  On
6   September 10, 2001, plaintiff underwent a CT scan of the lumbosacral
7   spine with contrast, which revealed a diffuse 3-mm. disc bulge at L4-
8   L5, associated with ligamentum flavum thickening, and a diffuse 4-mm.
9   disc bulge at L5-S1, with bilateral neuroforamen narrowing.  On
10  October 16, 2001, following treatment with intravenous steroids,
11  plaintiff's symptoms had "largely improved," though he still
12  experienced occasional paresthesias, spasms, urinary hesitancy, visual
13  loss, and ataxia.[4]  A.R. 120.

14

15      On July 9, 2001, plaintiff was diagnosed with severe degenerative
16  disc disease and degenerative joint disease, A.R. 99, and lumbosacral

17  _____

18  the terminal ileum with scarring and thickening of the bowel
19  wall; it frequently leads to intestinal obstruction and fistula
    and abscess formation and has a high rate of recurrence after
20  treatment."  Id. at 514.

21      [3]  Multiple sclerosis is "a disease in which there are foci
    of demyelination of various sizes throughout the white matter of
22  the central nervous system, sometimes extending into the grey
23  matter.  Typically, the symptoms of lesions of the white matter
    are weakness, incoordination, paresthesias, speech disturbances,
24  and visual complaints.  The course of this disease is usually
    prolonged, so that the term multiple also refers to remissions
25  and relapses that occur over a period of many years.  The
26  etiology is unknown."  Id. at 1611.

27      [4]  Ataxia is "failure of muscular coordination; irregularity
    of muscular action."  Dorland's Illustrated Medical Dictionary at
28  165.

1  spine x-rays taken August 29, 2001, showed degenerative end plate

2  changes with spondylosis[5] and disc space narrowing from L2 to S1, but

3  no evidence of fractures or malalignments.  A.R. 112, 138.  On

4  November 15, 2001, Gregory R. Keese, M.D., diagnosed plaintiff with a

5  large parietal extra-axial AVM, A.R. 80-81, and on November 16, 2001,

6  plaintiff underwent a cerebral angiogram, which revealed a large left

7  frontal AVM.  A.R. 76-77.

8

9      On September 3, 2002, plaintiff was examined by Richard Levy,

10  M.D., who diagnosed plaintiff with MS and a left frontal AVM.  A.R.

11  162-69.  Dr. Levy reported plaintiff experiences "pins and needles" on

12  the left side of his body, but his reflexes and the range of motion of

13  his joints are normal, and there is no atrophy or disorganized motor

14  function.  A.R. 163.  Dr. Levy opined plaintiff's AVM is asymptomatic,

15  but he remains at a reasonable substantial lifetime risk of bleeding.

16  A.R. 169.  Dr. Levy further opined plaintiff's AVM could be treated

17  with stereotactic proton radiosurgery, and would have an excellent

18  prognosis if so treated.  A.R. 164-65, 169.  Finally, Dr. Levy opined

19  plaintiff's MS needs further evaluation by a neurologist.  A.R. 164,

20  169.

21

22      Since October 1, 2002, plaintiff has received treatment at the

23  Arrowhead Regional Medical Center, A.R. 197-218, where, on March 6,

24  2003, he underwent an MRI of the brain without contrast, which

25  revealed a scattered small area of signal abnormality in the bilateral

26  ────────────────

27      [5]  Spondylosis is "a general term for degenerative changes
due to osteoarthritis."  Dorland's Illustrated Medical Dictionary

28  at 1684.

4

periventricular area, probably nonspecific ischemic white matter
disease, with MS less likely but it cannot be ruled out, and a 2-cm.
left frontal AVM.  A.R. 205.


     On November 26, 2002, Harley Estrin, M.D., a nontreating,
nonexamining physician, opined plaintiff has the residual functional
capacity to occasionally lift and/or carry up to 20 pounds, climb,
balance, stoop, kneel, crouch and crawl, frequently lift and/or carry
up to 10 pounds, stand and/or walk for up to 4 hours in an 8-hour day,
and he should avoid all exposure to hazards.  A.R. 170-77.


     On December 5, 2002, David L.B. Fringer, M.D., diagnosed
plaintiff with Crohn's disease and a history of MS.  A.R. 185.  On
December 31, 2002, Dr. Fringer reevaluated plaintiff, and diagnosed
him with probable chronic obstructive pulmonary disease.  A.R. 181.
On January 14, 2003, Dr. Fringer prescribed a cane to assist with
plaintiff's ambulation.  A.R. 180.


     On November 5, 2003, Kalpana Ganesan, M.D., examined plaintiff,
A.R. 187-91, and noted plaintiff is receiving interferon treatment
once a week for MS, and has some symptoms of numbness and some
weakness at times.  A.R. 191.  Dr. Ganesan found that, on neurological
examination, plaintiff has "decreased sensation to touch and pinprick
on the left side of the body and also his motor strength was 4+/5 in
all four extremities and the knee jerk could not be elicited
bilaterally."  Id.  Additionally, Dr. Ganesan reported that although
plaintiff is able to walk back and forth, "at times he [feels] wobbly
during ambulation[,]" and he had decreased range of motion on lumbar

1  spine flexion and lateral flexion and extension.  Id.  Finally, Dr.
2  Ganesan opined plaintiff can occasionally lift and/or carry up to 25
3  pounds; climb, balance, kneel, crouch, crawl, stoop, push, pull, and
4  feel; frequently lift/and or carry up to 10 pounds; can sit, stand
5  and/or walk for 6 hours in an 8-hour day, with normal breaks; should
6  avoid temperature changes and vibration; and is unlimited in his
7  ability to reach, handle and finger, but can only occasionally "feel"
8  sensation.  A.R. 191-95.
9
10                              **DISCUSSION**
11                                 **III**
12      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
13  review the Commissioner's decision denying plaintiff disability
14  benefits to determine if her findings are supported by substantial
15  evidence and whether the Commissioner used the proper legal standards
16  in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th
17  Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).
18
19      "In determining whether the Commissioner's findings are supported
20  by substantial evidence, [this Court] must review the administrative
21  record as a whole, weighing both the evidence that supports and the
22  evidence that detracts from the Commissioner's conclusion." Reddick,
23  157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir.
24  2001).  "If the evidence can reasonably support either affirming or
25  reversing the [Commissioner's] conclusion, the court may not
26  substitute its judgment for that of the [Commissioner]." Reddick, 157
27  F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.
28  2002).

1    The claimant is "disabled" for the purpose of receiving benefits

2    under the Act if he is unable to engage in any substantial gainful

3    activity due to an impairment which has lasted, or is expected to

4    last, for a continuous period of at least twelve months.  42 U.S.C. §

5    1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

6    burden of establishing a prima facie case of disability." Roberts v.

7    Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

8    (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

9

10    Regulations promulgated by the Commissioner establish a five-step

11    sequential evaluation process to be followed by the ALJ in a

12    disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

13    must determine whether the claimant is currently engaged in

14    substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

15    **Second Step**, the ALJ must determine whether the claimant has a severe

16    impairment or combination of impairments significantly limiting him

17    from performing basic work activities.  20 C.F.R. § 416.920(c).  If

18    so, in the **Third Step**, the ALJ must determine whether the claimant has

19    an impairment or combination of impairments that meets or equals the

20    requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §

21    404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the

22    **Fourth Step**, the ALJ must determine whether the claimant has

23    sufficient residual functional capacity despite the impairment or

24    various limitations to perform his past work.  20 C.F.R. § 416.920(f).

25    If not, in **Step Five**, the burden shifts to the Commissioner to show

26    the claimant can perform other work that exists in significant numbers

27    in the national economy.  20 C.F.R. § 416.920(g).

28    //

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since filing his application. (Step One). The ALJ then found plaintiff "has multiple sclerosis, Crohn's disease and hepatitis C" (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform his past relevant work as a sewing machine operator; therefore, he is not disabled. (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff retains the RFC to perform light work[6] with occasional climbing, balancing, kneeling, crouching, crawling or stooping, provided he avoids working at unprotected heights. A.R. 15. Furthermore, based on vocational expert Alan Boruskin's testimony, the ALJ concluded plaintiff has the RFC to perform his past relevant work

---

[6] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

as a sewing machine operator (DOT no. 786-682-018),[7] which the
vocational expert testified is light, semi-skilled work.  A.R. 248.
However, plaintiff contends the ALJ's findings are not supported by
substantial evidence because the ALJ did not properly consider the
opinions of Dr. Ganesan regarding plaintiff's manipulative
limitations.

     "[T]he Commissioner must provide 'clear and convincing' reasons
for rejecting the uncontradicted opinion of an examining physician."
Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Edlund v.
Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001).  "Even if
contradicted by another doctor, the opinion of an examining doctor can
be rejected only for specific and legitimate reasons that are
supported by substantial evidence in the record."  Regennitter v.
Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir.
1999); Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th
Cir. 2002).

     Here, the ALJ gave "significant weight" to examining physician
Dr. Ganesan's opinions, which formed the bases for the ALJ's finding
that plaintiff retains the RFC to perform light work limited by
occasional climbing, balancing, kneeling, crouching, crawling or
stooping and avoiding working at unprotected heights.  A.R. 14-15;
see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)

---

     [7]  The Dictionary of Occupational Titles ("DOT") is the
Commissioner's primary source of reliable vocational information.
Johnson v. Shalala, 60 F.3d 1428, 1434 n.1 (9th Cir. 1995); Terry
v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).

1  (examining physician's report constitutes substantial evidence to

2  support ALJ's disability determination).  Nevertheless, plaintiff

3  argues the ALJ's failure to incorporate Dr. Ganesan's assessment of

4  plaintiff's manipulative limitations into his RFC finding was

5  erroneous, and precludes the ALJ's RFC finding from being based on

6  substantial evidence.

7

8       The ALJ is responsible for resolving conflicts in the medical

9  evidence, Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002);

10 Edlund, 253 F.3d at 1156, and drawing reasonable inferences that flow

11 from that evidence.  Macri v. Chater, 93 F.3d 540, 544 (9th Cir.

12 1996); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Here,

13 Dr. Ganesan completed a form indicating that plaintiff is unlimited in

14 his ability to reach, handle and finger and limited in his ability to

15 "feel" sensation, which he can only do occasionally; however, Dr.

16 Ganesan also checked off boxes on the form indicating plaintiff can

17 only occasionally reach, handle and finger.  A.R. 194.  The ALJ

18 thoroughly reviewed Dr. Ganesan's opinions, A.R. 13-14, and

19 inferentially resolved this ambiguity by concluding Dr. Ganesan erred

20 in checking off the boxes on the form indicating plaintiff can only

21 occasionally reach, handle and finger.  This inferential conclusion by

22 the ALJ is eminently reasonable given:  (1) Dr. Ganesan's handwritten

23 notes on plaintiff's examination reflect that plaintiff has no

24 limitations in his abilities to reach in all directions, handle, and

25 finger, but does have decreased ability to feel sensation to pinprick

26 secondary to MS; (2) Dr. Ganesan found on examination that plaintiff

27 has a normal range of motion; and (3) Dr. Ganesan did not discuss any

28 limitations in plaintiff's abilities to reach, handle, and finger in

his medical report, but did set forth limitations in plaintiff's
ability to "feel" secondary to plaintiff's decreased sensation.  A.R.
189-90, 194; <u>see also</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.
1989)("[W]e are not deprived of our faculties for drawing specific and
legitimate inferences from the ALJ's opinion."); <u>Morgan</u>, 169 F.3d at
599 ("Where the evidence is susceptible to more than one rational
interpretation, it is the ALJ's conclusion that must be upheld.").

Furthermore, to the extent the ALJ erred in not including
plaintiff's limitation of only occasionally feeling sensation, such
error is harmless since plaintiff's past relevant work as a sewing
machine operator did not require plaintiff to perform any "feeling"
activity.  <u>See</u> U.S. Dep't of Labor, <u>Selected Characteristics of</u>
<u>Occupations Defined in the Revised Dictionary of Occupational Titles</u>,
167 (1993); <u>Batson v. Comm'r of the Soc. Sec. Admin.</u>, 359 F.3d 1190,
1197 (9th Cir. 2004) (harmless error applies to Social Security
disability determinations).

**V**

Hypothetical questions posed to a vocational expert must consider
all of the claimant's limitations, <u>Thomas</u>, 278 F.3d at 956; <u>Lewis v.</u>
<u>Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's depiction
of the claimant's disability must be accurate, detailed, and supported
by the medical record.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th
Cir. 1999).  "If a vocational expert's hypothetical does not reflect
all the claimant's limitations, then the 'expert's testimony has no
evidentiary value to support a finding that the claimant can perform
jobs in the national economy.'"  <u>Matthews v. Shalala</u>, 10 F.3d 678, 681

1  (9th Cir. 1993) (quoting <u>Delorme v. Sullivan</u>, 924 F.2d 841, 850 (9th

2  Cir. 1991)); <u>Lewis</u>, 236 F.3d at 517.

3

4      Here, the ALJ asked the vocational expert the following

5  hypothetical question:

6

7  [ALJ]:      I want you to assume that we have a hypothetical

8              man here who is 46 years of age, and [has] 11

9              years of education.  I want you to assume that

10             he's got the additional training and the work

11             experience that [plaintiff] has, and I want you to

12             assume further that this hypothetical person is

13             limited in what he can do.  The limitations would

14             be that he would be able to . . . lift and carry

15             about 10 pounds on a frequent basis, and 20 pounds

16             on an occasional basis. . . .  And as a result,

17             those conditions would have a slight effect on his

18             ability to do basic work activities, or they are

19             controlled or can be controlled by appropriate

20             medication without any significant adverse side

21             effects.  I want you to assume further that this

22             hypothetical person can only occasionally climb.

23             Has some problems with his left side.  Occasion-

24             ally balance, occasionally kneel, occasionally

25             crouch, occasionally crawl, and occasionally

26             stoop.  This hypothetical person should avoid

27             working . . . at heights where he would be

28             required to use balance.  I want you to assume

12

```
 1                  further that this hypothetical person has pain in

 2                  his head, his left side, . . . all the way down

 3                  from his shoulders to his legs.  All right, based

 4                  on this hypothetical, could that hypothetical

 5                  person do any of the past work that was done by

 6                  [plaintiff]?

 7   [VE]:          Only that of the sewing machine operator, Your

 8                  Honor.

 9

10   A.R. 249-50.

11

12        Based on the vocational expert's testimony, the ALJ concluded

13   plaintiff retains the RFC to perform his past relevant work as a

14   sewing machine operator.  A.R. 14-15.  Nevertheless, plaintiff

15   contends the ALJ's Step Four determination is not supported by

16   substantial evidence because the ALJ's hypothetical question to the

17   vocational expert did not include the manipulation limitations found

18   by Dr. Ganesan.

19

20        Plaintiff's argument is without merit.  As set forth above, the

21   ALJ reasonably concluded plaintiff is not limited in his manipulation

22   abilities, other than occasionally limited in his ability to "feel";

23   therefore, the ALJ was not required to include these limitations in

24   his hypothetical question to the vocational expert.  Rollins v.

25   Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Magallanes, 881 F.2d at

26   756-57.  Moreover, the vocational expert's testimony constitutes

27   substantial evidence to support the ALJ's determination that the

28   plaintiff can perform his past relevant work.  Roberts, 66 F.3d at
```

184; <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1415 (9th Cir. 1993).
Therefore, the plaintiff has not met his burden to prove he is unable
to perform his past relevant work.  <u>Sanchez v. Sec. of Health & Human
Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987).


**ORDER**

     IT IS ORDERED that: (1) plaintiff's request for relief is denied;
and (2) the Commissioner's decision is affirmed, and Judgment shall be
entered in favor of defendant.


DATE:  ___Nov. 16, 2005___          ___/s/ Rosalyn M. Chapman___
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-1424.MDO
11/16/05